SWARTZ v. DAHLQUIST.

1. NEGLIGENCE—PRESUMPTION OF DUE CARE—EYEWITNESSES.
   No presumption of due care on part of plaintiff's decedent, a westbound pedestrian, arises where there were eyewitnesses to his being struck by defendant's southbound car.

2. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.
   Slowly-moving westbound pedestrian who failed to see southbound motorist at 7 p.m. late in January while crossing north of northerly crosswalk of street which extended to the east only *held*, guilty of contributory negligence as a matter of law in action by administrator for fatal injuries received when struck by negligent southbound motorist then exceeding the permitted speed limit.

3. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—SHOWING UNDER OATH.
   Where there is no showing under oath that alleged newly-discovered evidence was unknown to plaintiff at the time of the trial or whether he or his attorneys had made a reasonably diligent effort to discover the mentioned testimony, no

Contributory negligence barring recovery as a matter of law, see 2 Restatement, Torts, §§ 432, 463, comment b, 464, comment a, 466, comment d; standard of conduct defined, §§ 283-285.

detailed showing as to how the discovery thereof was made and no affidavit by the proposed new witness as to what testimony he could give nor an explanation of the absence of such affidavit, and it is not apparent a different result would probably be obtained, plaintiff's motion for a new trial, following judgment for defendant *non obstante veredicto,* was properly denied.

4. SAME—REQUISITES.

A new trial may be granted on the ground of newly-discovered evidence only when it is shown that (1) the evidence, and not merely its materiality, is newly discovered; (2) it is not merely cumulative; (3) it is such as to render a different result probable on retrial; and (4) the party could not with reasonable diligence have discovered and produced it at the trial.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 7, 1947. (Docket No. 6, Calendar No. 42,839.) Decided February 16, 1948.

Case by Marty J. Swartz, administrator of the estate of John Swartz, deceased, against Henry Dahlquist, Jr., and another for damages arising from death of plaintiff's decedent. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Estes & Cooney,* for plaintiff.

*Howlett & Hartman,* for defendants.

NORTH, J. This is an automobile accident case in which plaintiff's decedent, John Swartz, a pedestrian, sustained fatal injuries as the result of being struck by a Buick automobile owned by defendant, Henry Dahlquist, Sr., and driven by his son, Henry Dahlquist, Jr. On trial by jury plaintiff, administrator of the estate of John Swartz, deceased, had verdict; but on their motion for judgment *non obstante veredicto,* judgment for defendants was en-

tered by the court. Plaintiff has appealed. We herein refer to Henry Dahlquist, Jr., as the defendant; and in disposing of the case assume that he was guilty of actionable negligence. The principal issue is this: Was the circuit judge correct in holding plaintiff's decedent was guilty of contributory negligence as a matter of law?

On the evening of January 20, 1942, about 7 o'clock, defendant was driving his father's automobile in a southerly direction on South Saginaw street in the city of Pontiac. At the place of accident the street is 80 feet wide from curb to curb. In the center there are double lines of streetcar tracks. The portion of the street occupied by these car tracks is paved with brick, and the remainder of the street is asphalt surfaced. Westerly of the brick paved portion there is room in the traveled portion of the street for three lines of cars, one for parked cars and two lanes for cars traveling in a southerly direction. At the time and place of the accident automobiles were parked along the westerly curb of the street. Defendant was driving in the lane next adjacent to the parked cars. The fair inference from the record is that he was proceeding somewhat in excess of the posted speed limit of 30 miles per hour. His car skidded upwards of 70 feet on a dry pavement. Defendant testified that he did not see plaintiff's decedent until "he was about 10 feet in front of my car."

Plaintiff's decedent was an able-bodied man 27 years of age. In crossing the street he was walking slowly in a westerly direction. He was not crossing at an intersection, but instead was crossing a short distance north of where the north line of Turk street, if extended, would cross South Saginaw street. However, Turk street which joins Saginaw street on the easterly side does not intersect the latter street. The undisputed testimony is that

plaintiff's decedent from the time he left the center of Saginaw street did not stop but instead continued walking slowly in a westerly direction.

. Francis Pullis, a witness for plaintiff, was driving a motor vehicle on South Saginaw street in the same direction defendant was driving; and at the time of the accident, was somewhere between 100 and 200 feet to the rear of defendant's automobile. We quote his testimony as to what he observed incident to the accident:

"I saw Mr. Swartz from the time I was on the railroad track (about 450 feet north of the point of accident) on South Saginaw street until he was hit. He was walking across the road from east to west.  *  *  *

"And I saw this man down the street, down on South Saginaw and he was—when I first saw him we was at the railroad tracks, in the middle of the road, middle of South Saginaw and he started right on across and I never thought much about it. The car kept moving south and the man kept moving towards the car and I remember saying at the time 'if that man doesn't hurry up, he is going to be hit' and then he disappeared from view and I just forgot about it and just like that (witness snapped his finger) I saw him fly through the air.  *  *  *

"The Buick was driving in the right lane as close to the parked cars as practical.  *  *  *

"He (Swartz) was walking from east to west.

"*Q.* Was there anything to prevent him from seeing the car approaching from the north?

"*A.* No. That is what I—

"*Q.* At any time so far as you could see, did he stop as he was going from east to the west?

"*A.* No, he never stopped, I am certain.  *  *  *

"*Q.* At any time did he change his direction or his course so far as you could see?

"*A.* No. There was nothing between us other than my truck and the Dahlquist car. The man was in motion at all times that I saw him. He just

seemed to be poking along.  He was walking slowly across the road.    *    *    *

"I am sure I saw him clearly.    *    *    *    This man was just poking along.  We (he) wasn't creeping I don't mean but he walked across the road slow. It wasn't fast.  If the man had stopped or run across the road, he would have been safe."

Another of plaintiff's witnesses, Henry Howell, at the time of the accident was driving a motor vehicle south on Saginaw street somewhat at the rear of the Dahlquist and Pullis vehicles.  In part he testified:

"I was driving approximately 30 miles an hour. Hearing a scream first called my attention to the accident.  Following the scream I saw a man fall out from in front of a car, Mr. Swartz, as he was identified to me later.    *    *    *    He was lying east and west on the pavement; his body, his head towards the east and feet toward the west.    *    *    *    I would say he was lying in the third—just out of the second lane if there were lanes there.    *    *    *    When he struck he was thrown to the left, to the east.    *    *    *

"Q.  Now, the injured man said something to you there, did he not?

"A.  That is right.

"Q.  Could you put it in your own words to the jury just what the injured man said?

"A.  The injured man said: 'I didn't see him.'

"I heard the driver of the car make a statement at the scene of the accident that he didn't see the pedestrian and the pedestrian said he didn't see the car."

A police officer who arrived at the scene shortly after the accident was called by plaintiff as a witness.  In part he testified:

"The man (Swartz) on talking to him complained of pain and evidenced pain.  He was not too clear as to what had hit him.  In fact he didn't know the

car had struck him and could not recall exactly how he came to be struck.   *   *   *

"The marks on the car are on the left of the center."

We quote the following from defendant's testimony:

"When I first saw the man he was walking. I was 10 or 15 feet from him. He was a foot or two to the left of the left front fender. The left front part of the bumper and hood just to the left of the center of the car, struck the man."

Careful review of the record has disclosed no testimony which amplifies or materially conflicts with that above quoted. There is no testimony of confusing or distracting circumstances incident to the accident. Nor is there any testimony that plaintiff's decedent made any observation for approaching traffic or that he took any other precaution for his own safety. Notwithstanding plaintiff's contention to the contrary, since there were eyewitnesses to this accident, no presumption arises that plaintiff's decedent exercised reasonable care when crossing the street. *Pulford* v. *Mouw,* 279 Mich. 376; *Black* v. *Ambs,* 307 Mich. 644. Construing the testimony most favorably to plaintiff, as we must on this appeal, we are unable to escape the conclusion that under the testimony produced at the trial plaintiff's decedent was guilty of contributory negligence as a matter of law.

Plaintiff's motion for a new trial was denied, and he urges that such denial constituted error. In his brief plaintiff in this respect presents only his claim of newly-discovered evidence, which consists of testimony which might be given on a new trial by Dick Keyes, who was a passenger in defendant's car at the time of the accident. Plaintiff's showing is that after the trial he discovered that Dick Keyes

at the time of the accident made a statement to the prosecuting attorney as follows:

"*Q*. (By the prosecuting attorney) What direction was the man (plaintiff's decedent) walking in?

"*A*. I think I saw him as soon as anyone. It looked as though he was going at an angle and going practically parallel with the cars. Going south and taking his time, going practically south."

The sole affidavit in support of the motion for a new trial was made by one of plaintiff's attorneys. In his affidavit he set forth: "That the facts therein (in the motion for a new trial) stated are true as he verily believes." In the motion a reason urged for granting the same is: "Because of certain newly-discovered testimony, *discovered by the plaintiff* since the trial of this cause." But in the attorney's affidavit in support of the motion is the following: "Deponent further says that since the trial of said cause *he has discovered* certain testimony, of which he had no knowledge at the time of the trial of said cause." Thus there is no showing under oath as to whether or not plaintiff at the time of the trial had knowledge of the so-called newly-discovered evidence or whether he had made a reasonably diligent effort to discover the mentioned testimony prior to the trial. Further, with the exception of the general statement that discovery was after the trial of the case, there is no showing as to when or under what circumstances the discovery was made. The motion was not accompanied by an affidavit of Dick Keyes as to what testimony he could give nor any explanation of the absence of such affidavit. Further, the record discloses that prior to the trial plaintiff's attorneys were aware that the prosecuting attorney had taken one or more statements incident to this accident. This clearly

appears from the cross-examination of defendant by plaintiff's counsel from which we quote briefly:

"*Q.* Henry, did you ever make a statement to anyone pertaining to this accident?

"*A.* Yes, sir. To the prosecutor.

"*Q.* Did you ever have asked you this question and make this answer—'How far away from him were you when you first saw him? Answer, About 10 feet. He was about 10 feet in front of my car.'"

On a motion of this character the following is requisite:

"To entitle one to a new trial upon this ground (of newly-discovered evidence) it should be shown: *First,* that the evidence, and not merely its materiality, be newly discovered; *second,* that the evidence be not cumulative merely; *third,* that it be such as to render a different result probable on a retrial of the cause; *fourth,* that the party could not with reasonable diligence have discovered and produced it at the trial." *Marion* v. *Savin,* 315 Mich. 448, 455, quoting *Canfield* v. *City of Jackson,* 112 Mich. 120.

We are not persuaded that if the above noted evidence were produced at a new trial a different result would probably be obtained. Nor can we conclude that plaintiff or his attorneys, to whom it was evidently known that the prosecuting attorney had taken statements of witnesses concerning the accident, exercised reasonable diligence. Had they done so they would have timely discovered the evidence offered in support of the motion. The circuit judge was not in error in denying plaintiff's motion for a new trial.

The judgment entered in the circuit court is affirmed, with costs to appellees.

Bushnell, C. J., and Sharpe, Boyles, Reid, Dethmers, Butzel, and Carr, JJ., concurred.