## HOAG *v.* HYZY.

1. NEGLIGENCE — ACCIDENT — EVIDENCE — PRESUMPTIONS — EYE-WITNESSES.

   The issue of due care of plaintiff rests upon proof, not presumption, where there is an eyewitness to an accident in which the plaintiff was killed or suffered loss of memory as the result of the accident.

2. AUTOMOBILES — AMNESIA — PRESUMPTIONS — EYEWITNESSES — REQUESTS TO CHARGE.

   It was error for the trial court to grant a new trial for failure to give requests to charge that plaintiff who had suffered amnesia as a result of the accident, was entitled to benefit of presumption of exercise of due care, where there were 2 eyewitnesses to the accident at a highway intersection.

3. SAME—INSTRUCTIONS—ROAD CONSTRUCTION CONTRACTOR—SEVERAL LIABILITY OF DEFENDANTS.

   Instruction to jury in through highway motorist's action against defendant motorist on inferior highway who was not advised to stop because stop sign had been removed and not replaced by defendant road construction contractor that verdict could be against defendant motorist alone, against both defendants together or of no cause of action does not constitute an instruction that a verdict could not be rendered against defendant contractor and would not constitute reversible error, where no request so to charge had been made.

4. SAME—STOP SIGN—PROXIMATE CAUSE—INSTRUCTIONS.

   Charge of the court in action by motorist on through highway against motorist on stop road who had failed to stop and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 38 Am Jur, Negligence § 293.
[3] 38 Am Jur, Negligence § 369.
[4] 38 Am Jur, Negligence § 366.
[5] 25 Am Jur, Highways §§ 482, 583.
[6, 7] 5 Am Jur, Automobiles § 633.

road construction contractor who had removed the stop sign and not yet replaced it although the road was opened for traffic *held*, not misleading as to proximate cause, where it referred to contractor's failure to maintain the sign as "the proximate cause" but immediately stated that it was "not the entire cause" of the collision (PA 1949, No 300, § 671).

5. SAME—STATUTES—CUSTOMS AND USAGES—EVIDENCE.
    Testimony as to county custom with respect to removal and replacement of stop signs during highway construction was not admissible in action between plaintiff motorist on through highway who had known stop signs protected such highway and defendant motorist on stop road who had failed to obey absent stop sign which defendant road contractor had removed but not replaced, since a local custom cannot change a statutory duty relating to such signs (PA 1949, No 300, § 671).

6. EVIDENCE—PHOTOGRAPHS—IRRELEVANT SKID MARKS.
    Introduction of photographs showing skid marks on road at intersection where accident involved had occurred *held*, not error, where photographer testified that the skid marks shown had nothing to do with the accident, since the jury could not have been misled.

7. AUTOMOBILES—INTERSECTIONS—PICTURES—HARMLESS ERROR.
    Introduction in evidence of a picture of northwest part of intersection where westbound and southbound cars collided, taken some 9 months after occurrence of the accident *held*, harmless error, where it does not appear why picture was introduced and jury had an opportunity to examine pictures taken on day of accident which showed the buildings, trees, bushes and foliage.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 12, 1954. (Calendar No. 45,725.) Decided April 5, 1954.

Case by George Hoag against Edmund T. Hyzy, and Harry J. Plaggemars, James De Good and Richard Plaggemars, copartners, doing business as Westshore Construction Company, for injuries from automobile collision. Verdict for defendants. Or-

der entered granting new trial. Defendants appeal. Plaintiff cross-appeals. Reversed and judgment reinstated.

*Fred Roland Allaben* (*Craig E. Davids,* of counsel), for plaintiff.

*Varnum, Riddering, Wierengo & Christenson* (*Linsey, Shivel, Phelps & Vander Wal,* of counsel), for defendants Plaggemars and De Good.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for defendant Hyzy.

SHARPE, J. This case arises out of a collision between 2 automobiles, which occurred at approximately 7:20 a.m. on June 23, 1951, at the intersection of Gordon road and 120th street in Ottawa county, Michigan.

The record shows that it was a clear day and pavement dry. Plaintiff, George Hoag, was driving west on Gordon road, which is an east and west county road with blacktop pavement. The driving width of the road is about 20 feet. At the same time defendant, Edmund Hyzy, was driving south on 120th street, which is a hard-surfaced county highway of about 15 feet in width, north of Gordon road. Prior to the day in question, there had been a stop sign on 120th street at the entrance to Gordon road. This stop sign had been removed while defendant, Westshore Construction Company, under contract with the Ottawa County Road Commission, graded the shoulders of 120th street, north of Gordon road, preparatory to widening the pavement. At the time of the collision the stop sign had not been replaced. As defendant, Edmund Hyzy, drove south on 120th street and approached Gordon road, he did not know that there had been a stop sign there for traffic on.

120th street. He had been driving at a speed of 45 to 50 miles an hour, and when about 150 feet from the intersection he started to reduce his speed, and when about 100 feet from the intersection he was traveling about 35 miles an hour. He entered the intersection without seeing the automobile driven by plaintiff.

Plaintiff, George Hoag, accompanied by John Pitt, was driving from Grand Rapids to the Holland pier to go fishing. Plaintiff testified he drove at a speed of 40 to 45 miles an hour. He crossed a railroad track, which is 783.5 feet east of the center line of 120th street, and testified that he remembered nothing after that.

Theodore DeWitt, a witness for plaintiff, testified that the Hoag automobile was traveling about 60 miles an hour on Gordon road; that after he crossed the railroad track he was about 150 feet behind the Hoag car; that at the time he crossed the railroad track he noticed the Hyzy car coming from the north on 120th street, approximately the same distance from the intersection as he was; that when he was about 175 to 200 feet from the intersection he again saw the Hyzy car and estimated its speed at 50 miles an hour; that at this time the Hyzy car and the Hoag car were each about 50 feet from the intersection; that the Hoag car never slowed up prior to the collision; and that the Hoag car may have swerved less than 6 inches to the south as it entered the intersection.

John Pitt, who was riding in the right-front seat of the car plaintiff was driving, testified that as they crossed the railroad track the radio jarred off the station a bit, he bent over and adjusted it and was partly raised up when the collision occurred; that plaintiff was driving about 50 miles an hour on Gordon road; and that they crossed the railroad track at about 40 miles an hour. He testified:

"*Q.* You were adjusting the radio and as you looked up the accident occurred?

"*A.* Yes.

"*Q.* You didn't know there was going to be an accident until just an instant before it occurred?

"*A.* I didn't know there was going to be an accident.

"*Q.* Nothing occurred to your car to change its speed or anything until just the time of the accident?

"*A.* I can't remember nothing. I did not look to the right as we were approaching the intersection to see if there was a car coming so I do not know whether a car could be seen at that time or not because I made no observation of any kind. My attention was attracted to the radio and the first thing I knew there was an accident."

Plaintiff, George Hoag, testified:

"As we were going west after we got on Gordon road, I would say we were driving about 40, 45 miles an hour. I had been over that road before and had occasion to observe the stop signs and knew that Gordon road was a through intersection for traffic on 120th street to stop. I remember crossing the railroad track before the accident. I slowed down just a little and looked both ways because I knew that was the main line of the C & O from Grand Rapids to Chicago and there were no flashers, there was no train coming so I continued on. I don't remember anything after I crossed the railroad track."

At the conclusion of plaintiff's evidence, counsel for defendant, Edmund Hyzy, made the following motion:

"*Mr. Cholette:* Your Honor, at this time on behalf of the defendant, Edmund Hyzy, I desire to move for a directed verdict of no cause of action for 2 reasons. First, that the plaintiff has failed to sustain the burden of proof which rests upon the plaintiff to establish freedom from contributory negligence, second, that the testimony produced by the

plaintiff's own witnesses establishes that the plaintiff was, in fact, guilty of contributory negligence."

. Counsel for the construction company made the following motion:

"*Mr. Varnum:* I move the court for a directed verdict on 3 grounds. First of all plaintiff has not sustained the burden of proving either of the 3 necessary elements of his case: (1) that Harry J. Plaggemars and others, doing business as Westshore Construction Company, were guilty of negligence; (2) that the alleged negligence of the defendants, Plaggemars and others, was the proximate cause of the accident and injuries to the plaintiff; (3) that the plaintiff has not sustained the burden of proving his own freedom from contributory negligence."

The trial court took the motions under advisement by virtue of the Empson act.*

When the cause was being submitted to the jury, plaintiff's counsel requested the trial court to instruct the jury as follows:

"In this case, it is undisputed that plaintiff Hoag has what is known as an amnesia or inability to recall the facts surrounding this accident, and the medical proof is undisputed that the same was caused by this collision. It is also undisputed that there are no eyewitnesses as to whether plaintiff actually looked to the north as he was approaching this intersection. Therefore there is a presumption in the law that plaintiff Hoag was using due care and was not guilty of contributory negligence in the operation of this car as he approached and entered this intersection (*Breker* v. *Rosema,* 301 Mich 685 [141 ALR 867]).

"Whether or not the plaintiff Hoag was guilty of contributory negligence may depend not only upon factors that are externally visible, but also upon what passed through his mind in coming to conclusions

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 *et seq.*).—REPORTER.

and forming judgments as he approached this intersection. Obviously there could be no eyewitnesses to the latter type of conduct. Even under such circumstances plaintiff Hoag is entitled to the benefit of the presumption of due care, and it is therefore your duty to determine under all the circumstances and considering this presumption, whether he was free from contributory negligence. If you find he was free from contributory negligence, your verdict must be for the plaintiff (*Breker* v. *Rosema,* 301 Mich 685 [141 ALR 867])."

The trial court refused to give the above instructions. The cause was submitted to the jury, resulting in a verdict of no cause of action against each defendant. On May 8, 1952, plaintiff filed a motion for a new trial, and among the reasons given were, that the court erred in failing to give the jury the instructions heretofore mentioned. On July 17, 1952, the trial court granted a new trial for the reason that he felt he should have instructed the jury on the question of "presumption of due care" as requested.

On December 9, 1952, we granted defendants' application for leave to appeal and ordered that the cause be heard as a motion. Defendants urge that the trial court erred in granting a new trial for the reason that plaintiff was presumed to be free from contributory negligence, as there were 2 eyewitnesses who could testify as to plaintiff's observations just before and while entering the intersection.

The evidence of Theodore DeWitt shows that plaintiff's automobile was traveling at a rate of speed of about 60 miles an hour from the time it crossed the railroad track until the collision occurred; that plaintiff's car never changed its speed, but may have swerved not more than 6 inches as it entered the intersection; and that at the time of the

collision DeWitt was about 150 feet to the rear of plaintiff's car.

Clara Hyzy, wife of defendant Edmund Hyzy, testified in relation to plaintiff's car as follows:

"I would not be able to express any opinion as to the speed he was driving and did not see the car that we collided with at any time until it was almost on top of us, until it was out on the intersection. I didn't see it at all prior to that and no one in the car made any remark about seeing this car."

John G. Pitt, who was riding with plaintiff, testified that from the time plaintiff crossed the railroad track until the collision occurred, there was no change in the speed of plaintiff's car.

For many years we have adhered to the rule that where there is an eyewitness to an accident the issue of due care rests upon proof and not upon presumption. See *Foote* v. *Huelster,* 272 Mich 194. In the case at bar there were 2 witnesses who were present at the time of the collision. One was Clara Hyzy who was in the same automobile with defendant, Edmund Hyzy. She first saw plaintiff's automobile after it had entered the intersection and when "it was almost on top of us." Theodore DeWitt observed plaintiff's driving for a distance of more than 700 feet and was within 150 feet of plaintiff's car at the time of the collision. He observed that plaintiff swerved his car when he entered the intersection.

In *Schillinger* v. *Wyman,* 331 Mich 160, defendant was driving her automobile north in an easterly lane of a 4-lane, 40-foot paved highway, during a time when lights were required. Decedent started to cross the highway from the west. A collision between decedent and defendant's left front fender occurred as decedent was in the westerly part of the easterly lane. Shortly after the accident defendant told an

officer that she did not see decedent until she was practically upon him. The question there arose as to whether defendant was an eyewitness to the accident. We there held that the presumption is not indulged if the surviving defendant saw decedent at all before the accident, and that plaintiff is not entitled to the benefit of the presumption in view of the testimony that defendant saw decedent when she was practically upon him. Under the authority of the above case, plaintiff is not entitled to the benefit of the presumption, and the trial court was in error in granting a new trial for failure to give the offered instructions.

In view of the fact that plaintiff has filed a cross appeal, we shall discuss the claimed errors relied upon as further reasons for granting a new trial. Plaintiff urges that the trial court was in error in instructing the jury that a verdict could not be rendered against defendant Westshore Construction Company only. Plaintiff's declaration charges defendant construction company with negligence in removing the stop sign and failing to replace the same, in failing to have a watchman at the place in question, and failing to keep the highway in a proper condition for traffic. In count 3 of plaintiff's declaration, plaintiff charges both defendants with joint and concurrent negligence. The trial court gave the following instructions to the jury:

"If you are satisfied from the proof that you have heard that this accident or this collision was brought about by the negligence of Mr. Hyzy and that the plaintiff was free from negligence that contributed to the injury that resulted, then your verdict must be for the plaintiff and against Mr. Hyzy. If you are also satisfied that the failure to maintain this sign on the part of the Westshore Construction Company was a proximate cause of this resulting injury, and that that failure was something they could have

foreseen was dangerous, might result in an accident, then your verdict should also be against the Westshore Construction Company, and I am including in that, assuming also that Mr. Hoag was free from any contributory negligence. Now if Mr. Hoag has failed to satisfy you by a preponderance of the evidence that these defendants, or either of them, are guilty of negligence or has failed to satisfy you that he was free from negligence himself that contributed to this resulting injury, then your verdict must be no cause of action. In this action your verdict may be 1 of 3 kinds: it may be a verdict against Mr. Hyzy alone, a verdict against Mr. Hyzy and Westshore Construction Company together, or a verdict of no cause of action, which would mean that neither one of the defendants were liable and Mr. Hoag had no right to recover."

We fail to find in the above charge evidence to sustain plaintiff's claim that the trial court instructed the jury that it could not render a verdict against defendant Westshore Construction Company. Moreover, no such charge was requested by plaintiff. In *Linendoll* v. *Te Paske,* 327 Mich 129, 136, we said:

"Plaintiff next complains that the court failed to instruct the jury concerning defendant's duty to maintain proper observation and to drive so as to be able to stop within the assured clear distance ahead. The record discloses no requests therefor by plaintiff. Consequently, reversal will not be ordered on those grounds. Michigan Court Rule No 37, § 9 (1945); *Stewart* v. *Eghigian,* 312 Mich 699; *Molitor* v. *Burns,* 318 Mich 261."

See, also, *Torma* v. *Montgomery Ward & Company,* 336 Mich 468.

In view of the above authority it was not error to fail to instruct the jury when no such instruction was requested.

Plaintiff also urges that the trial court was in error in instructing the jury as follows:

"Now the plaintiff claims, as I have said, that this collision was caused because Mr. Hyzy did not stop at this place designated for cars to stop on 120th street, and that that was the proximate cause of this injury. * * *

"If, under what you have heard about this case, you believe that in spite of a practice in Ottawa county that [failure to replace sign] was not the use of ordinary care, then the road contractor was guilty in not maintaining the sign, and if the absence of that sign was a cause that lead to the collision that occurred, and was something that a reasonable prudent person could have foreseen might happen—the danger that could be apprehended—why, then, it was the proximate cause of this accident also, not the entire cause, but one of them that brought about this collision."

The fault found with this instruction is that the trial court used the term "the proximate cause" instead of "a proximate cause." It is to be noted that the trial court also used the term "a cause" and not the "entire cause." Under such circumstances we do not think the jury could have been misled. The error was not prejudicial. It is also urged that the trial court erred in permitting testimony of practices in Ottawa county in the removal and replacement of stop signs. We are in accord with plaintiff that such testimony should not have been admitted, for the reason that custom cannot change the statutory duty relating to signs,* but we are of the opinion that the charge of the court, while superfluous, was not prejudicial to the rights of plaintiff.

It is also urged that the trial court erred in permitting a photograph showing skid marks on Gordon road. It appears that Clayton W. Forry, a deputy sheriff and a witness for plaintiff, testified that he had pictures taken of the intersection, including those

---

* See PA 1949, No 300, § 671 (Stat Ann 1952 Rev § 9.2371).—Re-PORTER.

that showed skid marks, and as to those he testified, "Those marks have nothing to do with the accident." Under such testimony the jury could not have been misled or believe that the skid marks had any relationship to the possible liability of defendants.

Plaintiff also urges that it was error to admit in evidence a photograph of the northwest part of the intersection. This photograph was taken at a time of the year when there was no foliage or shrubbery in bloom. We also note that other pictures were taken of the intersection on the day of the collision showing the buildings, trees, bushes and foliage. These pictures were introduced in evidence. The record does not show the purpose of introducing into evidence the picture taken more than 9 months after the collision, but in view of the fact that the jury had an opportunity to examine pictures taken on the day of the collision, it follows that the introduction in evidence of the picture objected to was harmless error.

The trial court was in error in granting a new trial. An order will be entered for reinstatement of the judgment, with costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.