## HETT v. DUFFY.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—GREAT WEIGHT OF EVIDENCE—BRIEFS.

   The question as to whether verdict for plaintiff was against the great weight of the evidence is not before the Supreme Court, notwithstanding defendant moved for directed verdict, judgment notwithstanding verdict and new trial, where the appellants' brief does not present such question.

2. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.

   Plaintiff's decedent, a westbound pedestrian crossing divided highway at 9:35 p. m. in mid-June, *held*, guilty of contributory negligence as a matter of law, where he proceeded across southbound lanes immediately after a car had passed in front of him in the nearer of the 2 southbound lanes and was hit by defendants' right front fender in the westerly lane.

3. DEATH—PRESUMPTION OF DUE CARE.

   Whether or not there was a presumption of due care on the part of one now deceased and for whose death action was brought under the death act is not considered, where determined adversely to plaintiff by trial court and plaintiff did not claim error in such respect by way of of cross appeal and decedent was guilty of contributory negligence as a matter of law (CL 1948, § 691.581).

4. COURTS—OBITER DICTA—JUDGMENT.

   Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but *obiter dicta* and lack the force of an adjudication.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 770.
[2] 5 Am Jur, Automobiles § 446 *et seq.*
[4] 14 Am Jur, Courts § 83.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 3, 1956. (Docket No. 1, Calendar No. 46,416.) Decided September 4, 1956. Rehearing denied December 4, 1956.

Case by Margaret Hett, administratrix of the estate of Thomas Hett, against Mary A. Duffy and Edward A. Duffy under the death act for damages by reason of death resulting from automobile-pedestrian accident. Verdict and judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Daniel P. O'Brien* and *Isaac M. Smullin,* for plaintiff.

*Erickson, Dyll, Marentay, Van Alsburg & Slocum,* for defendants.

BOYLES, J. Plaintiff, as administratrix of the estate of her deceased husband Thomas Hett, sued the defendants, under the so-called death act[*] for the death of her husband resulting from an automobile accident. The case was heard by jury, plaintiff had a substantial verdict and judgment, and the defendants, the owner and the driver, respectively, of the automobile involved, appeal.

Appellants contend that the plaintiff's decedent was guilty of contributory negligence as a matter of law. That is the only question which controls decision here. At the close of the plaintiff's proofs, and again at the close of all the proofs, the defendants moved for a directed verdict on that ground. The court reserved decision on the motions and, under appropriate instructions, submitted to the jury the issues of fact as to whether the defendants were guilty of negligence and whether plaintiff had established freedom from contributory negligence.

---

[*] CL 1948, § 691.581 (Stat Ann 1953 Cum Supp § 27.711).

The verdict indicates the conclusions of the jury on both questions.

Defendants' motions for judgment *non obstante veredicto* and for a new trial also were denied. However, appellants' brief does not present here the question that the verdict was against the great weight of the evidence nor does their brief argue the question. We do not have that question here for decision.

In considering the facts, the plaintiff's averments in her amended declaration, the defendants' answer to the amended declaration, and admissions made at the pretrial, a statement of which is in the record, must be weighed. The briefs of both parties discuss the facts at length.

Southfield road is a north and south boulevard in Detroit. The accident occurred on the pavement in the westerly (southbound) 2-lane part of the boulevard. Joy road crosses Southfield east and west about 400 feet north from the point where the accident occurred on Southfield. At about 9:35 o'clock on the night of June 18, 1951, plaintiff's decedent was struck in the westerly lane of the boulevard by a southbound automobile owned by one of the defendants and operated by her brother, the other defendant, with the owner's permission and consent. Decedent died 12 hours later. There were 2 westerly 10-foot concrete lanes for the southbound traffic on the boulevard. There was a traffic light at the intersection of Joy road and the boulevard at which 2 automobiles, side by side, southbound on the boulevard, had stopped for the red light to change. Defendants' automobile was the westerly one of these 2. The other (easterly) car will hereafter be denoted as car #2. A third car, also southbound, was behind the defendants' automobile, driven by one Tuskey, who later testified in the case. When the light changed, the 3 cars proceeded south on South-

field. The defendants' automobile in the westerly lane went along more slowly; the car at the left of defendants' automobile (car #2), moving more rapidly, had passed defendants' car and was southbound in the easterly lane ahead of it, while plaintiff's decedent was on the 42-foot gravel, grass and clay parkway separating the north- and southbound traffic lanes on the boulevard. He was about to proceed west across the southbound lanes. As soon as the #2 car, which was moving south closer to decedent, had passed him, it exposed the defendants' approaching automobile plainly there to be seen by plaintiff's decedent. Decedent walked on west, behind the #2 car as soon as it had passed by. However, he did not succeed in crossing the pavement but was struck by the right front fender of defendants' automobile. Plaintiff's claim in her amended declaration "that Thomas Hett was struck while he was on the right shoulder of the westerly pavement of the highway" finds no support in the testimony.

Plaintiff in her amended declaration alleged that the decedent "at the time he crossed the westerly part of Southfield road [he] did not see the defendant and his car; * * * that at the time the decedent crossed the western part of Southfield road, the defendant Edward Anthony Duffy and his car were still on Joy road, and the decedent, therefore, could not see him." Unfortunately for plaintiff, the testimony conclusively shows that even if, as claimed by plaintiff, the defendants' car was still on Joy road at the time the decedent crossed the western part of Southfield, and that the defendants' automobile then made a left turn from Joy road south onto Southfield, still plaintiff's decedent could, and should, have seen the defendants' automobile approaching him. It would then have been on Southfield, within the decedent's plain sight for over 400 feet, if he had looked. If plaintiff's decedent had

looked and seen the defendants' approaching automobile, he could, and should, have stopped as he started across the western lanes of Southfield after car #2 had passed him, and then would not have been struck when he continued to cross Southfield in front of defendants' automobile. In that connection, the circuit judge who heard the pretrial statements certified to the admission made at the pretrial, that

"Plaintiff pleads and admits that he did not see defendant's car at any point south of Joy road."

We conclude that the pleadings, the admissions and the testimony in the record convincingly establish that plaintiff's decedent was guilty of contributory negligence as a matter of law when he proceeded to cross the westerly lane of the southbound 2 lanes of Southfield road in front of the defendants' automobile without looking to see the defendants' car which was approaching in plain sight. He would not have been hit, had he not attempted to cross the westerly (southbound) lane on Southfield directly in front of it.

In the absence of such proof to show that plaintiff's decedent was free from contributory negligence, the court should have granted the defendants' motions for a directed verdict, or for a judgment for the defendants notwithstanding the verdict.

Is the question of plaintiff's decedent's right to a presumption of due care properly before this Court; and if so, if answered, would it be controlling of the result?

*Inter alia,* the trial court carefully charged the jury on the issues of negligence, contributory negligence, and proximate cause, and submitted to the jury these issues of fact, for its consideration. As to that, the plaintiff-appellee, in her brief filed here, contends it was proper. The defendants-appellants,

as hereinbefore noted, in motions for a directed verdict, for judgment *non obstante veredicto,* and for a new trial, claimed that the plaintiff had failed to prove freedom from contributory negligence as a matter of law.

The testimony to show the contributory negligence of plaintiff's decedent was received without objection. The *defendants-appellants* now attempt to raise here on appeal, for the first time, this issue:

"Issue No 2—Did the plaintiff have the benefit of a presumption of due care on the part of her decedent?"

It is difficult to understand how the *defendants-appellants* consider an answer to this question of any controlling importance. In fact, counsel for appellants, in their brief, do not now claim error in that respect; on the contrary, they concede:

"This question was also ruled upon favorably to the defendants and appellants by the trial court and the plaintiff and appellee has not claimed error in regard thereto by way of cross appeal."

It is true that the *plaintiff* has not raised the question here and has not cross-appealed. Under the circumstances, anything this Court might now say on the question of law as to presumption of due care would not be controlling of decision. On the contrary, our conclusion here that plaintiff's decedent was guilty of contributory negligence as a matter of law controls the outcome, and any discussion of the issue of presumption of due care would merely be *obiter dicta.*

"Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but *obiter dicta* and lack the force of an adjudication."

*People* v. *Case* (syllabus), 220 Mich 379 (27 ALR 686).

See, also, *Robinson* v. *Gordon Oil Co.*, 266 Mich 65, 71.

Reversed without new trial and remanded for entry of judgment of no cause for action, with costs to appellants.

Dethmers, C. J., and Sharpe, Kelly, and Carr, JJ., concurred with Boyles, J.

Black, J. (*concurring in result*). For at least a quarter century prior to advent of *Schillinger* v. *Wyman,* 331 Mich 160, the presumption of due care was applied, denied, or submitted in our trial courts according to the useful and intelligent rules that were analyzed so exhaustively in *Gillett* v. *Michigan United Traction Company,* 205 Mich 410. *Schillinger* has temporarily sidetracked *Gillett.* The question is—for how long?

*Gillett* is firmly grounded on Cooley doctrine (*Teipel* v. *Hilsendegen,* 44 Mich 461) and it classifies cases to which the presumption should or should not apply as follows:*

(a) The case where direct, positive, uncontradicted and unimpeached testimony of an eyewitness or eyewitnesses discloses negligent acts or omissions of the decedent. The presumption as to this class is, of course, eliminated by such testimony as a matter of law.

(b) The case where direct or circumstantial evidence is presented which has but a slight or inconclusive tendency to overcome the presumption. As to this class, the presumption and the testimony

---

* Another class, that of cases disclosing no evidence, direct or circumstantial, tending to establish contributory negligence of the decedent, was not considered in *Gillett* probably because the facts gave no reason for discussion thereof.

make, according to *Gillett,* a jury question to be submitted under rules stated on page 416 of the report.

(c) The case where direct testimony of an eyewitness or eyewitnesses, as to negligent acts or omissions of the decedent, is contradicted, impeached, or rendered improbable by other circumstances shown in evidence. This class of case should, according to *Gillett,* be governed by the same rules that appear on page 416 of the report.

(d) The case where circumstantial evidence of contributory negligence, usually consisting of or supported by physical facts, is so clear as to lead to inevitable conclusion by all reasonable minds that the decedent was contributorily negligent. As to this class the presumption, as in (a) above, is eliminated from the case.

The Court, having reviewed its earlier cases as indicated, proceeded (p 421 of report) to summarize its classification and analysis as follows:

"While the above may serve as a rough classification of the decisions relative to the presumption of due care, it will be seen that the real test in each case is whether or not the evidence tending to show contributory negligence, be it direct or circumstantial, is so conclusive that reasonable and unprejudiced minds could not fail to be convinced that decedent was careless. If there is room for reasonable doubt, the question must be submitted to the jury. And while the jury, in weighing the evidence, may not consider the presumption, yet if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It was not entirely displaced, but remained in abey-

ance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed."

I turn next to another reasoned decision of the so-called Fellows Court. *Petersen* v. *Lundin,* 236 Mich 590, presents a set of facts substantially duplicating what we have here in this Hett Case, save only as noted at conclusion of the present opinion. The Court said:

"In behalf of defendant it is said that the presumption of care allowed by law in cases where there are no eyewitnesses cannot be indulged because defendant was an eyewitness and his testimony established want of care on the part of Mr. Petersen. Defendant's testimony was limited to a view of decedent at the very moment he was in front of the automobile and just as he was struck. Defendant did not see decedent before he was in front of the automobile, and the case is barren of witness evidence of what care decedent exercised before he got in the path of the automobile. The fact decedent was in a place of danger did not require a finding of want of care, for this would make the happening of the accident evidence of contributory negligence on his part, and this can no more be done with reference to contributory negligence than it can upon the question of defendant's negligence. The care required of Mr. Petersen was exercised or not as he approached the path of the automobile and at such point defendant did not see him. In the absence of testimony showing the actions of Mr. Petersen as he approached the path of the oncoming automobile, the law permitted the presumption of due care on his part to carry the issue to the jury. This being true, the court was not in error in instructing the jury that they should assume Mr. Petersen saw the automobile. Such instruction was no more than the application of the presumption that Mr. Petersen was exercising due care.

"The ruling asked in behalf of defendant would, in effect, make a pedestrian guilty of negligence as a matter of law if he so conducted himself as to get into the path of an automobile. On a dark, misty night the distance automobile lights are away is somewhat deceptive, and also the speed of an automobile. Persons do get in the path of automobiles even while exercising due care. There is no rule of law requiring a pedestrian to rivet his eyes on an approaching automobile. He should look but if, having looked, it appears safe to cross, he may proceed, and his care is not to be determined solely by the fact he was struck and was not at that second looking at the automobile."

In light of the foregoing I am unable to sign the opinion proposed in this case by Mr. Justice BOYLES. He brands defendant Edward A. Duffy, and the witness Tuskey, as "eyewitnesses to the accident." He does so as a matter of law, necessarily on favorable-to-defendant view of the testimony. The jury below was amply justified in finding, from defendant Edward A. Duffy's admissions and contradictory statements, that he did not see the decedent at all prior to impact and, as to the witness Tuskey, was similarly justified in finding that he saw nothing tending to indicate presence or absence of contributory negligence.

Mr. Justice BOYLES relates that Tuskey saw the decedent "through his windshield just before he was hit." The fact is that whatever Tuskey saw of the decedent prior to impact was through his own windshield plus the rear window of defendants' car and the windshield or right-front window of the latter. Even if we were to consider Tuskey's testimony in light favorable to the defendants—and I suggest it should be the other way around—all he saw through the windshield and through the defendants' car with

respect to what the decedent did or did not do prior to impact was a fleeting view of the decedent's head and shoulders in the split instant prior to impact. I do not look upon the testimony either of Tuskey or of the defendant driver as "eyewitness" testimony and, even if it be so viewed, it should come within the scope of division (b) above.

This Court in recent years has gone a long way toward final destruction of the presumption of due care. In *Schillinger* we went so far as to manufacture *sua sponte* an "eyewitness" out of pure rumor made into hearsay. Upon that tragic novelty, *Schillinger* until it is retired has eliminated the presumption of due care from all pedestrian death cases where the Court chooses to presume, or infer from hearsay, that the surviving driver "saw decedent at all before the accident." The driver may have seen nothing of evidentiary value tending to prove or disprove contributory negligence of him whose mouth is closed in death. The Court knows naught of that without the testimony of such driver. It simply presumes that the driver may have seen something and, on that homemade *ipse dixit*, the time-tried presumption of due care is ousted from the case as a matter of law. A new presumption has thus crept without honors into Michigan pedestrian law—a presumption of existence of credible eyewitness testimony to negligent acts or omissions of the decedent—a presumption that annihilates another presumption, that of due care, as a matter of law. Uncommon law like this will be found only in Michigan and I note that it did not spawn in our State until after the Court of Cooley through Fellows passed into praiseful history. We can well imagine, having again scanned the worthy opinions of their day, what these great scholars would say, were they yet here, of an attempt to make an "eyewitness" of one who has never taken the oath of a witness, and it may be said with

conviction that the error of picking up a misunderstood remark (as in *Collar* v. *Maycroft*, 274 Mich 376) would never have grown in their presence into *Schillinger's* monstrous form.

Here, in the *Schillinger Case*, is the sole proof of the fact-premise on which past decisions of this Court were arrayed and divided according to favor or disfavor (p 161):

"Shortly after the accident defendant told an officer that she had not seen decedent until she was practically upon him. A witness for plaintiff testified that from what he learned he knew that defendant saw the accident. There were no other eyewitnesses."

(It is fair to inquire, the hearsay statement not being offered or rendered admissible as an admission, how with evidentiary value a witness may testify that another "saw" an event. It would seem that such other would be the only living mortal who could testify to the fact of his own sight and what if anything it revealed.)

I turn now to the target paragraph of Mr. Justice BOYLES' opinion—the 9th. It is said there, in one sweeping sentence, that the presumption of due care is out of the case "under all the circumstances." Nineteen cases, including *Cary* v. *Thomas*, 345 Mich 616,* are cited in support without proffered analysis or representation as to collectively applicable rule thereof.

The practice of writing an expansive conclusion of law, followed by indiscriminate strewing over the

---

*The majority opinion in this ink-fresh *Cary Case* adopts a quotation from *Heckler* v. *Laing*, 300 Mich 139 (cited above with the 19), and I note with deferential humor that the quotation includes the approving and possibly unnoticed citation of *Gillett*. It is clear that *Gillett*, like a persistent stray cat of annoyance to my present Brothers, will not go away and that they sooner or later must either recognize or dispose of it. Its above classified 4-footed rule is enduring because it is right, and it may well prove to have more lives than those of its enemies.

page of numerous references only, is known to most trial counsel as "shotgun citation." It pursues the whimsey that potent impression will be made if a multitude of citations is crowded into the muzzle of the brief with or without special attention to fit and weight thereof. Of course, and when detonation is over, the dissenting ballistician will, if wise, check each of the pellets to determine penetrable worth and effect thereof.

The first of the 19 (*Elrich* v. *Schwaderer*, 251 Mich 33) is that of a motorist whose violation during nighttime of the "assured clear distance" rule cost him his life. He was unable to clear a huge concrete mixer from the path of his car and his personal representative was properly ruled out of court on cited strength of *Gillett's* rule (d) above. The last (*Cary*) is not even a highway or traffic death case. It involved a question of proper jury instruction on the issue of contributory negligence of one who died of lethal gas in a private home, and the case admittedly presented an issue of fact on that score.

As to the remaining 17 cases I will simply say, after deduction of already considered *Schillinger* and its brood (*Marchlewicz* v. *Morrisette*, 332 Mich 271, and *Hoag* v. *Hyzy*, 339 Mich 163), that each has been carefully examined and that no one with possible exception of *Buchel* v. *Williams*, 273 Mich 132, and *Swartz* v. *Dahlquist*, 320 Mich 135[*] presents even remote counterpart of the situation we have here, that is to say, the situation where in the absence of genuine eyewitnesses the representatives of a deceased pedestrian actually do call the defendant motorist to the witness stand and do succeed in establishing, by the certain or uncertain testimony of the

---

[*] In *Buchel* the question of decedent's contributory negligence was held for the jury and in *Swartz* an unimpeached and disinterested eyewitness testified to decedent's continued acts of negligence right up to impact.

latter, either that he did not see the decedent at all prior to impact or, if he did see him, that his view was limited to the same extent as was dealt with in *Petersen* v. *Lundin,* 236 Mich 590. On this contrasted record the testimony of Duffy and Tuskey "was limited to a view of decedent at the very moment he was in front of the automobile and just as he was struck" (quotation from *Petersen,* p 592).

Until we modify *Schillinger* to *Gillett* and *Petersen* the representatives of deceased pedestrians in cases where there are no real eyewitnesses to the decedent's conduct will be denied right to jury verdict if they do not call the surviving driver to the stand and correspondingly will be denied that right if they do call him. The driver thus and regardless of his impeachment or the inconclusive nature of his testimony will continue to enjoy shameful advantage over the dependents of his victim—an advantage of even greater magnitude than he obtained over that victim when the unequal battle of steel against flesh was resolved against the latter. No wonder we are presently in the quaint position of compelled admission "that not all presumptions have the same effect." (*Cebulak* v. *Lewis,* 320 Mich 710.)

I will conclude by picking up one of the aforesaid 19 cases (*Molitor* v. *Burns,* 318 Mich 261) for presentment as follows:

In the *Molitor Case* decedent was standing on and near edge of the highway pavement within the angle made by the opened left door of a State police car. He as a motorist had been stopped by the police for a traffic violation. His car was stopped immediately ahead of the police car. The latter was parked on the shoulder of the highway adjacent to right edge of pavement. Its left wheels were between 12 and 22 inches from the edge of the pavement. Defendant's truck approached from the rear of the police car and struck decedent while he was standing in such posi-

tion, facing the officers who were in the car. The officers testified to hearing defendant's truck approaching (the court presumed decedent did also) and to the fact that decedent did not pay any attention to it but continued looking and talking in their direction (into their car) until hit by the truck. The Court held that decedent's alleged contributory negligence *was a question for the jury* and proceeded to say this (p 265):

"Under the circumstances presented in this case the presumption of freedom from contributory negligence does not exist. *Fairchild* v. *Railway Co.,* 250 Mich 252, 260."

Here, in *Molitor,* unimpeached eyewitnesses testified to everything the decedent did or did not do prior to impact. Naturally and under *Gillett* the presumption of due care had no place in the case.

Since *Molitor* is one of the aforesaid 19 cases, and since it cites and relies on *Fairchild,* we should of right examine the latter. Here is what we find on page 260 of the report:

"There are many cases holding that the presumption of exercising due care does not apply where there are *eyewitnesses to the accident.* But, if we are to preserve and apply the reason underlying this presumption, we must hold that the language used in such opinions cannot be too literally construed, and that 'eyewitnesses' to the accident must be held to mean those who have knowledge of some fact or circumstance which throws light upon the question as to whether or not the deceased did those things which under the circumstances constituted the exercise of due care."

This last quotation is my final commentary on the opinion of Mr. Justice BOYLES. I would return to the rule of *Gillett* and *Petersen* and, on strength thereof, respectfully dissent from the reasoning set forth in Mr. Justice BOYLES' opinion. Both were written and

unanimously adopted by respected members of this Bench whose lucid opinions were and still are pridefully pointed to by older members of the bar, and no good reason for disregard thereof has as yet been written into our reports.

· The presumption of due care having been considered on both sides of the conference table, I turn to record facts on which it must be said, as a matter of law, that plaintiff failed to sustain the burden of disproof of contributory negligence. It is alleged in the declaration, admitted by answer, and plainly echoed in unmodified pretrial statement that the decedent, then engaged in crossing Southfield from east to west, did not see the defendants' car at any time after it progressed through the intersection of Joy road. Joy road is at least 400 feet from the point of impact. The pedestrian engaged in crossing a busy divided-lane highway whose failure of lookout continues to such extent is obviously and as a matter of law guilty of causally-connected negligence.

The pleadings and pretrial statement establish the fact and conclusion of law respecting decedent's contributory negligence exactly as if an unimpeached and disinterested eyewitness had testified to decedent's continued passage across the separate southbound traffic lane without turning of head or other evidence of observation in the only direction from which traffic danger was expectable. The case thus fits *Gillett's* division (a) above.

On ground that the decedent's contributory negligence is established by the aforesaid pleadings and pretrial statement, I concur in the result reached by Mr. Justice BOYLES.    ·

ADDENDA (Added August 24, 1956): The foregoing dissent was submitted for consideration of other members of the Court on May 29th. Since then Justices SMITH and DETHMERS have written in the

case and Justice BOYLES has deleted from his opinion the above-mentioned "target paragraph" with its 19 cited cases and included treatment of testimony given by witnesses Tuskey and Duffy. This supplement, then, will explain reference to and treatment in foregoing dissent of that which no longer appears in the opinion reported over Mr. Justice BOYLES' signature.

I reiterate, for reasons given above, concurrence in reversal without new trial.

SMITH, J. *(concurring in result)*. It is in Jamieson and Brown's Michigan Automobile Law (2d ed), that we best find described the state into which this important branch of the law has fallen. The authors, with abundant citation, note (section 110, p 319) that "in the cases where there are no witnesses, the presumption may be relied upon entirely as declaring the decedent not negligent; it may be used only to send the case to the jury; or the presumption may not be relied upon at all. In the cases where there are witnesses we have an even more confused situation." Thus the law wavers from case to case, appeals multiply, litigants' expenses mount, justice is uncertain, and meaningless distinctions beget differentiations even less meritorious, all a miserable progeny of confusion compounded.

The situation presents a good example of how an unqualified statement in an opinion, taken out of context, grows into a careless dictum, which, with uncritical repetition, becomes canonized into a "rule" of law.

The early law was clear. It presumed, in the absence of evidence to the contrary, that a decedent acted with due care and that he was free from negligence. Whether or not the presumption results from our taking judicial notice of the instinct of self-preservation (see 9 Wigmore, Evidence [3d ed],

§ 2510) is unimportant. We need no preceptor to advise us that a normal human being reacts with prudence in the presence of peril. The presumption, of course, may be rebutted by contrary evidence, direct or circumstantial, verbal or physical. But evidence it must be, not guess, not speculation. We made all this clear in the early case of *Mynning* v. *Detroit, Lansing & Northern R. Co.,* 64 Mich 93, 102 (8 Am St Rep 804), wherein we said:

"The presumption of law is that the person killed at a crossing did stop, and look and listen, and will prevail in the absence of direct testimony on the subject. But where there is affirmative, direct, and creditable testimony that the person injured went upon the track without stopping to look and listen, the presumption is rebutted and displaced."

We come, with the passage of years, however, to the case of *Foote* v. *Huelster,* 272 Mich 194. Here, as the Court pointed out (p 198), "there was enough evidence relative to the place and character of the collision and skid marks upon the pavement to present an issue of fact relative to the care exercised by Mr. Foote (the deceased)." So far, this is all routine. There was evidence, physical and otherwise. But the opinion does not stop here. It goes on with the sentence: "Where there is an eyewitness to an accident the issue of due care rests upon proof and not upon presumption." Are we to gather from this statement that the mere presence of an eyewitness alone is enough to destroy the presumption, regardless of what he saw, regardless of whether or not he in fact saw anything of evidentiary merit? Obviously not. For in the *Foote Case* there were eyewitnesses to the accident *and,* in addition, they testified as to the facts and circumstances. The statement, read in its context, is accurate. Wrenched out of context, however, it has been cited again and again

(with a dictum similar in language in *Mullaney* v. *Woodruff,* 280 Mich 66) as authority for the proposition that the mere presence of an eyewitness destroys the presumption, regardless of the testimony offered.

So it was employed in *Peck* v. *Hampel,* 293 Mich 252. In this case there were 2 eyewitnesses to the accident, the defendant driver and his accompanying wife. Whatever of evidentiary value they may have observed, however, must forever remain a secret, for neither testified. Yet the Court held as follows (pp 261, 262):

"The principal question in this case concerns the contributory negligence of decedent. Citation of authority is unnecessary to establish the principle that where there are no eyewitnesses to the death, the law will presume that decedent was in the exercise of ordinary care, but where there are eyewitnesses the presumption of due care on the part of decedent vanishes.

"In *Foote* v. *Huelster,* 272 Mich 194, we said:

" 'Where there is an eyewitness to an accident the issue of due care rests upon proof and not upon presumption. This is so even if the eyewitness is the adverse party.'

"In my opinion the defendant was an eyewitness to the accident. He was presumed to see what was there to be seen."

The above represents a complete distortion of the principle that the presumption may be rebutted only by some kind of evidence and, as a practical matter, destroys it, for rare is the accident which does not involve the presence of at least 2 eyewitnesses, the alleged tort-feasor and the injured person.

(We might add that we would be the more impressed by the Court's makeweight argument in *Peck* v. *Hampel, supra,* that decedent was walking diagonally across the intersection [whatever this may

have had to do with proximate cause] were it not for the recent citation of this case on the eyewitness point in *Black* v. *Ambs,* 307 Mich 644, 648, coupled therein with the *Foote Case* excerpt, which speaks merely of "an eyewitness to an accident.")

It should not be thought, however, that such cases stand alone. If this were true, however indefensible the result might be, there would, at least, be a certainty to the matter. But authority opposite in principle abounds. See dissent of McALLISTER, J., in *Peck* v. *Hampel, supra*; Finucan, The Presumption of Due Care in Michigan, 33 MSBJ, March, 1954, p 28; and cases cited and referred to by Mr. Justice BLACK herein.

There have thus developed 2 lines of "authority," "reconcilable" only on minute factual differences. The opposing cases appear side by side in the reports, actually in direct conflict, yet each standing as authority of some kind. Again and again this issue arises, against a background of confusion, dissent, and uncertainty.

In this case we have a pedestrian who was struck by an automobile on or near a public highway. The witnesses to the accident saw nothing of evidentiary value. This is the typical situation in which the presumption arises. I agree, however, that upon the facts, the pleadings, and the pretrial statement, the presumption has been rebutted and that decedent was guilty of contributory negligence as a matter of law. But I cannot agree with Mr. Justice BOYLES that "any discussion of the issue of presumption of due care would be merely *obiter dicta*," or with the Chief Justice that "the circumstances under which the presumption should be indulged" is apparently unnecessary to decision in the case before us.

I make this point because much of the confusion described by Jamieson and Brown, *supra,* is traceable directly to the misconception implicit in the

above. For dictum is a statement in an opinion not necessary to the decision. A classic statement is that of Curtis, J., in *Carroll* v. *Lessee of Carroll*, 16 How (57 US) 275, 286, 287 (14 L ed 936) ; "if it (the point or matter commented upon) might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision." Let us apply the test. Could the applicability of the presumption of due care have been decided either way without affecting plaintiff's right of recovery? The question supplies its own answer. We cannot (in a no-eyewitness case) reach our decision of contributory negligence on the part of the plaintiff without giving the most exhaustive consideration to the presumption of due care. (See the careful discussion of both aspects of the problem in *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410.) If, however, we think the presumption of due care as one legal doctrine, and the issue of contributory negligence (as a matter of law) as another, this other so entirely unrelated, to the former, that any discussion of the former is mere *obiter dictum* when our decision turns on the latter, then, obviously our holdings with respect to this problem (which is in truth single and indivisible) will, as Jamieson and Brown point out, present a "confused situation."

Here the applicability of the presumption was discussed in the trial court, briefed and argued upon appeal, and with respect to it we must reach a decision before we can hold that there was contributory negligence as a matter of law. I reject, then, its dismissal as mere *obiter*. The presumption is a part and parcel of the issue we must decide. With respect to it the law should be clarified. We should make it clear to the profession and to our people, lest injustice be done through the perpetuation of error,

that the mere presence of eyewitnesses to an accident is not enough to rebut the presumption of due care. The question always to be asked, and answered, is, What of evidentiary value did they see? Such eyewitnesses must, to destroy the presumption, present "affirmative, direct, and creditable testimony" (*Mynning* v. *Detroit, Lansing & Northern R. Co., supra*) showing decedent's negligence. We take testimony, not attendance.

Subject to the above, I concur in reversal, with costs to appellants.

BLACK, J., concurred with SMITH, J.

DETHMERS, C. J. (*concurring in result*). Statements in an opinion concerning some rule of law, however illuminating, are, when not necessary to decision of the case, but dicta. *People* v. *Case,* 220 Mich 379 (27 ALR 686); *Robinson* v. *Gordon Oil Co.,* 266 Mich 65. Through the several opinions in this case the participating members of this Court say, unanimously, that by reason of plaintiff's admissions, in the pleadings and at pretrial, that plaintiff's decedent failed to maintain a reasonable and proper lookout, he must be held to have been guilty of contributory negligence as a matter of law; and, accordingly, judgment below for plaintiff is reversed and the case remanded for entry of judgment of no cause for action in favor of defendants. I agree. This epitomizes reasoning accepted by all the Justices as controlling of decision for reversal. It encompasses all that is necessary to that decision.

The court below did not instruct the jury on the subject of presumption of freedom from contributory negligence as applied to plaintiff's decedent; plaintiff does not here complain on that account, saying, in her brief, that that is a question which is not before this Court for review; and, naturally enough,

defendants, who here seek and obtain reversal of judgment for plaintiff, approve the lower court's failure to instruct that plaintiff's decedent was, or under circumstances might be, entitled to the benefit of such presumption. How could consideration of the circumstances under which a decedent should be presumed to have maintained a proper lookout be pertinent or necessary to decision in this case in which plaintiff flatly admits that, as a matter of fact, her decedent did not do so? Consequently, I reserve expression of my views concerning the correctness of previous decisions of this Court on that subject and the circumstances under which the presumption should be indulged for a case where it is necessary to decision and controlling of result.

I concur in reversal, without new trial, with costs to defendants.

SHARPE and KELLY, JJ., concurred with DETHMERS, C. J.

EDWARDS, J., took no part in the decision of this case.